UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AMANDA GONZALEZ,
    *Plaintiff,*

v.

NEW BEGINNINGS FOR LIFE, LLC,
    *Defendant.*

No. 3:19cv1736(MPS)

**RULING ON MOTION TO DISMISS**

Plaintiff Amanda Gonzalez brings suit against her former employer, New Beginnings for Life, LLC ("NBFL"), alleging claims of associational disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and interference and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. ECF No. 1. NBFL moves to dismiss Gonzalez's complaint under Fed. R. Civ. P. 12(b)(6). ECF No. 25. For the reasons that follow, the motion to dismiss is GRANTED in part and DENIED in part.

**I.    FACTUAL ALLEGATIONS**

The following facts are drawn from Gonzalez's complaint and accepted as true for the purpose of this motion.

NBFL operates a group home in Colchester, Connecticut. ECF No. 1 at ¶ 3. In April 2018, NBFL hired Gonzalez as a Resident Assistant. *Id.* at ¶ 4. Gonzalez's son suffers from a number of severe psychological disorders, including severe conduct disorder, impulse control disorder, suicidal ideation, overtly sexualized childhood behavior, adjustment disorder, and oppositional disorder. *Id.* at ¶ 5. In early May of 2019, Gonzalez learned that her son had sexually assaulted his younger sister, Gonzalez's daughter. *Id.* at ¶ 6. As a result of this incident, Gonzalez's son was committed for inpatient treatment at Natchaug Hospital. *Id.* at ¶ 7. Gonzalez notified Rebecca

Montgomery, NBFL's Assistant Director, about Gonzalez's son's psychological diagnoses and hospitalization. *Id.* at ¶ 8. Thereafter, Montgomery and Gonzalez discussed treatment options for Gonzalez's son and Montgomery recommended various treatment programs that Gonzalez's son could be enrolled in after he was discharged from inpatient care. *Id.* at ¶ 9. Montgomery was well aware of Gonzalez's son's disabilities and Gonzalez's association with her son. *Id.* at ¶ 10.

According to the psychologists and counselors at Natchaug Hospital, after his discharge, Gonzalez's son would require active supervision twenty-four hours a day, seven days a week. *Id.* at 11. In anticipation of her son's discharge from inpatient care, Gonzalez prepared an application for FMLA leave and submitted it to NBFL. *Id.* at ¶ 12. The FMLA leave period was supposed to be from May 5, 2019 through June 30, 2019. *Id*. at ¶ 13. However, the doctor who completed the FMLA paperwork made a typographical error and inadvertently put June 30, 2019 as both the start and end date of Gonzalez's leave. *Id*.

NBFL "notified Gonzalez of the discrepancy in her paperwork and asked her to submit new paperwork, but also indicated that it knew the doctor had made a typographical error and knew Gonzalez was seeking leave through June 30, 2019." *Id*. at ¶ 14. Gonzalez agreed to provide corrected FMLA paperwork as soon as possible. *Id*. at ¶ 15. When Gonzalez contacted the doctor's office, she was informed that the doctor who had completed the FMLA paperwork had recently gotten married. *Id.* at ¶ 16. The doctor was on an extended vacation for her honeymoon and unable to complete new paperwork until she returned. *Id.* Gonzalez advised NBFL of this situation and was told that she could submit the corrected paperwork when the doctor returned from her honeymoon. *Id.* at ¶ 17. Despite this assurance, NBFL terminated Gonzalez's employment on June 19, 2019. *Id.* at ¶ 18.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

## III. DISCUSSION

### A. Associational Disability Discrimination

In count one, Gonzalez alleges that NBFL terminated her on the basis of her son's disability.

The ADA prohibits, *inter alia,* "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To state a claim for associational discrimination under the ADA, a plaintiff must allege that "1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the

employer's decision." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016). As to the fourth factor, the Second Circuit recognizes three circumstances that would give rise to such an inference:

> 1) "expense," in which an employee suffers adverse action because of his association with a disabled individual covered by the employer's insurance, which the employer believes (rightly or wrongly) will be costly;
> 2) "disability by association," in which the employer fears that the employee may contract or is genetically predisposed to develop the disability of the person with whom he is associated; and
> 3) "distraction," in which the employer fears that the employee will be inattentive at work due to the disability of the disabled person.

*Id.*

NBFL argues Gonzalez fails to state a claim because she has not alleged facts suggesting that any of these three circumstances apply. ECF No. 26 at 5. In her opposition, Gonzalez makes clear that she is alleging the distraction theory – that is, that NBFL terminated her employment because it feared she would be distracted at work due to her son's disability. ECF No. 31-1 at 5-6.

A plaintiff's burden to establish an initial *prima facie* case is "minimal and de minimis." *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019). "[T]o state a claim, a plaintiff must plausibly allege that the plaintiff . . . has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* (quotation marks and citations omitted) Gonzalez's allegations fall short of plausibly raising a reasonable inference that concern over inattentiveness was a determining factor in her termination. The complaint alleges that Gonzalez notified NBFL of her son's disability and her need to take FMLA leave as a result. ECF No. 1, Count 1 at ¶¶ 10, 14 – 17. She alleges her FMLA paperwork contained a typographical error as to the start date and even though NBFL was aware of the circumstances behind the error and had told her she could provide the corrected paperwork when the doctor returned to the office, she was denied leave and was terminated. *Id.* at ¶¶ 16 – 17. Even when these factual allegations are

accepted as true and all reasonable inferences are drawn in favor of the plaintiff, the complaint does not suggest that NBFL thought Gonzalez would be distracted during the workday by her son's disability. Because Gonzalez has failed to allege sufficiently a causal nexus between her association with her disabled son and the termination of her employment, the motion to dismiss count one is granted.

### B. FMLA Interference

In count two, Gonzalez alleges that NBFL interfered with her rights under the FMLA by failing to grant her leave to which she was entitled and instead terminating her employment. ECF No. 1, count 2 at ¶ 22.

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's rights under the FMLA. 29 U.S.C. § 2615(a)(1). "[I]n an interference claim, the result must be that the employer denies the employee benefits under the FMLA." *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 22 (D. Conn. 2018).

To state a *prima facie* case of interference with FMLA rights, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio,* 817 F.3d at 424.

NBFL argues that Gonzalez fails to allege facts demonstrating that she was entitled to leave under the FMLA. ECF No. 26 at 6. According to NBFL, Gonzalez's failure to provide it with a

certification with a corrected start date "deprived [her] of any rights under the FMLA." ECF No. 26 at 7.[1]

"When an employee is eligible and requests leave under the FMLA, '[a]n employer may require that [the] request ... be supported by a certification issued by the health care provider' of the family member for whom the employee is caring." *Porter v. Donahoe*, 484 F. App'x 589, 590 (2d Cir. 2012) (quoting 29 U.S.C. § 2613(a)). The certification is sufficient if it provides the date the serious health condition began, its probable duration, relevant medical facts, and an estimate of the amount of time that such employee is needed to care for the employee's family member. 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306. A certification is "incomplete" if "one or more of the applicable entries have not been completed." 29 C.F.R. § 825.305(c). A certification is "insufficient" if the entries are completed, but "the information provided is vague, ambiguous, or non-responsive." *Id.* If an employee provides a certification that is incomplete or insufficient, the employer shall advise the employee to that effect, and "shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). The employer "must provide the employee with seven calendar days ... to cure any such deficiency." *Id.* "In all instances in which certification is requested, it is the employee's responsibility to provide the employer with complete and sufficient certification and failure to do so may result in the denial of FMLA leave." 29 C.F.R. § 825.306(e).

Although the complaint is sparse, when the allegations are accepted as true and all reasonable inferences drawn in Gonzalez's favor, she has plausibly alleged that she provided a sufficient certification and therefore was entitled to leave under the FMLA. The complaint alleges

---

[1] NBFL asserts the same argument – that Gonzalez has not plausibly alleged that she is entitled to FMLA leave - as to Gonzalez's FMLA retaliation claim in count 3. Since the analysis is the same, I need only address the argument once.

that NBFL knew that Gonzalez sought leave to care for her son upon his discharge, knew that the start date on the certification was a typographical error and told her she could submit corrected paperwork later, and knew that Gonzalez was requesting leave through June 30, 2019. The allegations support an inference that NBFL knew that Gonzalez sought to start her leave May 5, 2019, and, therefore, read as a whole, the complaint plausibly alleges that NBFL had an estimate of the time she requested to care for her son as required by the statute. 29 U.S.C. § 2613(b)(4)(A). As a result, the complaint states a claim for interference under the FMLA. The motion to dismiss count 2 is denied.

### C. FMLA Retaliation

In count 3, Gonzalez alleges a claim of FMLA retaliation.

The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). To establish a *prima facie* case of FMLA retaliation, "a plaintiff must establish that (1) [she] exercised rights protected under the FMLA, (2) [she] was qualified for [her] position, (3) [she] suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (quotation marks omitted) (quoting *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)).

NBFL argues that Gonzalez fails to plausibly allege that her termination occurred under circumstances giving rise to an inference of retaliatory intent. ECF No. 26 at 9. NBFL contends that "temporal relationship between the alleged protected activity and the alleged adverse employment action, by itself, is not sufficient to demonstrate discriminatory motivation" and

points to *Hewett v. Triple Point Tech., Inc.*, 171 F. Supp. 3d 10 (D. Conn. 2016) in support. *Id.* But *Hewett* is distinguishable procedurally and factually.

In *Hewett*, which was decided on summary judgment, the plaintiff failed to adduce any evidence of retaliatory animus beyond the temporal proximity of her termination.[2] *Id.* at 20. The Court went on to apply the *McDonnell Douglas* burden shifting framework and concluded that the employer had provided significant evidence that the plaintiff was terminated because of her poor performance. *Id.* The Court next found that the plaintiff had failed to produce evidence from which a reasonable jury could find that the defendant's legitimate business reason was pretextual. *Id.* at 21.

But on a motion to dismiss, as in this case, the plaintiff need only plausibly allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). An inference of retaliatory intent can be established when there is a basis to conclude that a "causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (citing *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003)). "This connection can be shown by a close temporal proximity in time between the protected activity and the adverse employment action." *Wu Zhang v. Brookhaven Sci. Assocs., LLC*, No. 18CV4987, 2019 WL 5537248, at *2 (E.D.N.Y. Oct. 25, 2019). *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between

---

[2] The Court noted that it had determined at the motion to dismiss stage that Hewett had made out a *prima facie* case for retaliation based on the close temporal relationship between Hewett's requests for medical leave and her termination. *Hewett*, 171 F. Supp. 3d at 20.

a protected activity and retaliatory action.") Here, Gonzalez went on leave May 5, 2019 and was terminated six weeks later on June 19, 2019. Although the Second Circuit "has declined to draw a bright line as to how close in time the events must be" to establish causation, *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019), a causal inference may be drawn here where the protected activity and adverse action occurred within a six week period. *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases finding temporal proximity sufficient to establish a causal connection between the protected activity and adverse employment action, including a period up to eight months). Because the plaintiff has met her pleading burden as to a plausible inference of retaliatory intent, the motion to dismiss count 3 is denied.

## IV. CONCLUSION

For these reasons, the motion to dismiss is GRANTED as to count one and DENIED as to counts two and three. The parties shall confer and file an updated Form 26(f) report within 14 days of the Court's ruling.

IT IS SO ORDERED.

Dated: June 23, 2021
Hartford, Connecticut

/s/
Michael P. Shea, U.S.D.J.